# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| **BRANDON PAGE, individually and on behalf of all others similarly situated,** | **DOCKET NO. _____** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **DTE MIDSTREAM, LLC, AND DTE MIDSTREAM APPALACHIA, LLC.** | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

1.      Plaintiff Brandon Page brings this lawsuit to recover unpaid overtime wages and other damages from DTE Midstream, LLC and DTE Midstream Appalachia, LLC. (collectively "DTE") under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104.

2.      Page and the other workers like him ("Putative Class Members") regularly worked for DTE in excess of forty (40) hours each week.

3.      These workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4.      These workers were paid a day-rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II.    JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental

jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Page is a resident of this District and Division with a residence in Scenery Hill, Washington County, Pennsylvania. DTE has substantial pipeline and crude storage facilities throughout Western Pennsylvania including a large storage facility in Canonsburg, Pennsylvania. https://dtemidstream.com/company-2/ (last visited October 18, 2019).

### III.   THE PARTIES

8.      Page worked for DTE from October 2017 until February 2018 as a welding inspector.

9.      Throughout his time with DTE, Page received a day-rate with no overtime compensation.

10.     His day rate was less than $455.00 per day.

11.     Page's consent to be a party plaintiff is attached as Exhibit A.

12.     Page brings this action on behalf of himself and all other similarly situated workers who were paid by DTE's day-rate system.

13.     Each of these workers received a flat amount for each day worked without overtime pay.

14.     The class of similarly situated workers sought to be certified is defined as follows:

> **All current and former inspectors performing work on behalf of DTE Midstream, LLC or DTE Midstream Appalachia, LLC who were paid a day rate in the past three (3) years.** (the Putative Class Members).

15.     Defendants DTE Midstream, LLC and DTE Midstream Appalachia, LLC are a foreign corporation doing business throughout the United States and may be served through their registered agent, **CT Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.**

### IV.   COVERAGE UNDER THE FLSA

16.     For at least the past three years, DTE has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17.     At all times hereinafter mentioned, DTE has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18.     At all times hereinafter mentioned, DTE has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

19.     For at least the past three years, Page and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

### V.   FACTS

20.     "DTE Midstream is a builder, investor and owner-operator of gathering, regulated pipelines, and gas storage assets – a strong midstream portfolio – serving producers, gas & electric utilities, marketers, power plants and large industrial customers."[1]

---

[1] https://dtemidstream.com/company-2/ (last visited October 18, 2019).



21.     DTE currently owns and operates "more than 1,900 miles of pipelines with a capacity of 9.3 Bcf/d and 338,600 HP of compression across the Midwest to the Northeast." *Id.*

22.     To complete their business objectives, DTE relies on inspectors.

23.     For example, Page worked for DTE October 2017 until February 2018 as a welding inspector.

24.     As a welding inspector, Page's primary job duties included inspecting the welds on oil and gas pipelines, storage facilities, and other construction and production projects as needed.

25.     Page did not have any supervisory duties.

26.     Page did not hire for fire employees.

27.     Page did not exercise discretion and judgment as to matters of significant.

28.     To the contrary, Page worked with his hands.

29.     Page performed manual labor.

30.     Page used hand tools to work on pipelines.

4

31.     Page worked in the elements and would become dirty as a result of his work.

32.     Page worked in dangerous conditions.

33.     Pipelines have the potential to explode.

34.     Pipelines can be dangerous.

35.     Page does not work in an office.

36.     Page does not manage a business unit.

37.     Page cannot make decisions as to matters of significance that would impact overall business operations.

38.     Page's decisions are limited to routine and manual tasks surrounding pipeline inspections for DTE.

39.     Page is heavily supervised by DTE.

40.     Page is required to follow DTE policies and procedures.

41.     Page reports to DTE on a regular basis.

42.     DTE determined the pay practice through which Page is compensated.

43.     DTE did not guarantee Page a salary.

44.     DTE did not provide Page overtime pay.

45.     DTE employed Page for purposes of the FLSA.

46.     DTE set Page's schedule.

47.     DTE required Page to work over 40 hours in a week.

48.     DTE typically scheduled Page to work 10-12 hour shifts, for as many as 6-7 days a week.

49.     DTE keeps accurate records of the hours, or at least days, of Page's work.

50.     DTE required Page to report his time to it.

51.     DTE required Page to report his expenses to it.

52.     DTE approved Page's time worked.

53.     DTE approved Page's expenses.

54.     Page did not receive a day rate that exceeded $455 a day.

55.     Page did not receive more than $100,000.00 a year.

56.     Separate from his day rate, Page was paid a per diem.

57.     The per diem Page was paid was not considered wages.

58.     Page was paid other reimbursements.

59.     The reimbursements Page was paid were not considered wages.

60.     Page's work was production based.

61.     Page's work was integral to the operation of DTE's pipelines and crude transportation.

62.     Page was prohibited from deviating from DTE's quality standards.

63.     Page is a blue-collar worker.

64.     Page is not exempt under any white-collar exemption.

65.     Page was not guaranteed a salary.

66.     DTE cannot demonstrate that Page was paid on a salary basis in accordance with the FLSA and PMWA.

67.     DTE cannot demonstrate that Page was not its employee for purposes of the FLSA and PMWA.

## VI.     FLSA VIOLATIONS

68.     Page incorporates the preceding paragraphs by reference.

69.     As set forth herein, DTE violated the FLSA by failing to pay Page and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

6

70.     At all relevant times, DTE has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

71.     DTE employed Page and each member of the Putative Class.

72.     DTE's pay policy denied Page and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

73.     DTE owes Page and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

74.     DTE knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Page and the Putative Class is willful.

75.     Due to DTE's FLSA violations, Page and the Putative Class Members are entitled to recover from DTE for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

76.     The improper pay practices at issue were part of a continuing course of conduct, entitling Page and Putative Class Members to recover for all such violations, regardless of the date they occurred.

**VII.  PMWA VIOLATIONS**

77.     Page brings this claim under the PMWA as a Rule 23 class action.

78.     The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

79.     At all relevant times, DTE was subject to the requirements of the PMWA.

80.     At all relevant times, DTE employed Page and the Putative Class Members as an "employee" within the meaning of the PMWA.

81.     Even though some of the work performed by Page on behalf of DTE took place outside of Pennsylvania's borders, Page is still entitled to the protections of the PWMA as a Pennsylvania resident. *Truman v. DeWolff, Boberg & Associates, Inc.,* 15 Wage & Hour Cas. 2d (BNA) 25,

2009 WL 2015126 at *2 (W.D. Pa. July 7, 2009) ("there is nothing within the PMWA that restricts the benefits of the PMWA to work performed within the United States"); *Friedrich v. U.S. Computer Systems, Inc.,* 1996 WL 32888 (E.D.Pa. Jan.22, 1996) (holding the PMWA to apply to Pennsylvania-based employees who perform work in states outside of Pennsylvania).

82.     The PMWA requires employers like DTE to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Page and the Putative Class Members are entitled to overtime pay under the PMWA.

83.     DTE has and had a policy and practice of misclassifying Page and the Putative Class Members as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

84.     Page and the Putative Class Members seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

85.     Page and the Putative Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by DTE, as provided by the PMWA.

## VII.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

86.     Page incorporates all previous paragraphs and alleges that the illegal pay practices DTE imposed on Page were likewise imposed on the Putative Class Members.

87.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and PMWA.

88.     The Putative Class Members were subject to the same working conditions as Page.

89.     The Putative Class Members are similarly situated based on DTE's common pay policy.

90.   The Putative Class Members are similarly situated based on DTE's common practices applied to all Putative Class Members.

91.   The Putative Class Members are similarly situated because DTE' plan regarding the use and pay of Putative Class Members is similar.

92.   The Putative Class Members' primary job duties included inspecting oil and gas pipelines, storage facilities, and other construction and production projects as needed.

93.   Putative Class Members did not have any supervisory duties.

94.   Putative Class Members did not hire or fire employees.

95.   Putative Class Members did not exercise discretion and judgment as to matters of significance.

96.   To the contrary, Putative Class Members worked with their hands.

97.   Putative Class Members performed manual labor.

98.   Putative Class Members used hand tools to work on pipelines.

99.   Putative Class Members worked in the elements and would become dirty as a result of their work.

100.   Putative Class Members worked in dangerous conditions.

101.   Putative Class Members do not work in an office.

102.   Putative Class Members do not manage a business unit.

103.   Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

104.   Putative Class Members' decisions are limited to routine and manual tasks surrounding pipeline inspections for DTE.

105.   Putative Class Members are heavily supervised by DTE.

106.   Putative Class Members are required to follow DTE policies and procedures.

107.    Putative Class Members report to DTE on a regular basis.

108.    DTE determined the pay practice through which all Putative Class Members are compensated.

109.    DTE did not guarantee the Putative Class Members a salary.

110.    DTE did not provide the Putative Class Members overtime pay.

111.    DTE employed the Putative Class Members for purposes of the FLSA.

112.    DTE set the Putative Class Members' schedule.

113.    DTE required the Putative Class Members to work over 40 hours in a week.

114.    DTE typically scheduled Putative Class Members to work 10-12 hour shifts, for as many as 6-7 days a week.

115.    DTE keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

116.    DTE required the Putative Class Members to report their time to it.

117.    DTE required the Putative Class Members to report their expenses to it.

118.    DTE approved the Putative Class Members' time worked.

119.    DTE approved the Putative Class Members' expenses.

120.    The Putative Class Members did not receive a day rate that exceeded $455 a day.

121.    The Putative Class Members did not receive more than $100.000 a year.

122.    Separate from the day rate, the Putative Class Members were paid a per diem.

123.    The per diem was not considered wages.

124.    The Putative Class Members were paid other reimbursements.

125.    The reimbursements were not considered wages.

126.    The Putative Class Members' work was production based.

127.    The Putative Class Members' work was integral to the operation of DTE's pipelines and crude transportation.

128.    The Putative Class Members were prohibited from deviating from DTE's quality standards.

129.    The Putative Class Members are blue collar workers.

130.    The Putative Class Members are not exempt under any white-collar exemption.

131.    The Putative Class Members were not guaranteed a salary.

132.    DTE cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA and PMWA.

133.    DTE cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA and PMWA.

134.    Numerous other individuals who worked with Page indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

135.    Based on his experiences and tenure with DTE, Page is aware that DTE's illegal practices were imposed on the Putative Class Members.

136.    The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

137.    DTE's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

138.    Page's experiences are therefore typical of the experiences of the Putative Class Members.

139.    The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

140.    Page has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Page has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

141.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

142.    Absent this action, many Putative Class Members likely will not obtain redress of their injuries and DTE will reap the unjust benefits of violating the FLSA, PMWA, and any other applicable state labor laws.

143.    Furthermore, even if some of the Putative Class Members could afford individual litigation against DTE, it would be unduly burdensome to the judicial system.

144.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

145.    The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

  a. Whether DTE employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and PMWA;

  b. Whether DTE's day rate pay practice meets the salary-basis test;

  c. Whether DTE's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

  d. Whether DTE's violation of the FLSA and PMWA was willful; and

e.     Whether DTE's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

146.     Page's claims are typical of the claims of the Putative Class Members. Page and the Putative Class Members sustained damages arising out of DTE's illegal and uniform employment policy.

147.     Page knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

148.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## VIII.   JURY DEMAND

149.     Page demands a trial by jury.

## IX.   RELIEF SOUGHT

WHEREFORE, Page prays for judgment against DTE as follows:

a.     An Order designating the Putative Class as a FLSA collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.     For an Order appointing Page and his counsel to represent the interests of the FLSA Class;

c.     For an Order finding DTE liable to Page and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.    For an Order designating the state law classes as class actions pursuant to Fed. R. Civ.

P. 23;

e.    For an Order appointing Page and his counsel as Class Counsel to represent the interests

of the both the federal and state law classes;

f.    For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the

highest available rates; and

g.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

14

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**