**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDON PAGE, individually and<br>on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>DTE MIDSTREAM LLC and DTE<br>MIDSTREAM APPALACHIA, LLC<br><br>*Defendant*. | Civil Action No. 2:19-cv-01345-DSC-LPL<br><br>Judge David S. Cercone<br><br>Magistrate Judge Lisa Pupo Lenihan |

**APPLIED CONSULTANTS, INC'S MEMORANDUM**
**IN SUPPORT OF MOTION TO INTERVENE**

## I. INTRODUCTION

David Craft ("Craft") has filed a signed consent to join this lawsuit under Section 16(b) of the Fair Labor Standards Act ("FLSA"). The lawsuit which he seeks to joins asserts claims for overtime against DTE Midstream LLC and DTE Midstream Appalachia, LLC (collectively, "DTE") under the FLSA and a parallel Pennsylvania state statute.

Craft, however, was employed by and paid by Applied Consultants, Inc. ("Applied Consultants"). As Craft's employer, Applied Consultants determined the central issues in his potential claim for overtime under these statutes: his pay and his duties. Plus, Craft executed an arbitration agreement as a condition of his employment that precludes his participation in this lawsuit.

Pursuant to Federal Rule of Civil Procedure 24, Applied Consultants moves to intervene to address Craft's effort to join this lawsuit. Its status as his employer and its arbitration agreement

encompassing Craft's claims justify both intervention as of right and permissive intervention under that Rule.

## II. FACTUAL CONTEXT

### A. Applied Consultants' Business

Applied Consultants employs professional personnel that it assigns to customers to provide third-party inspection services on its behalf. (Declaration of Jenny Lacy (attached as Ex. 1) at ¶ 3). This is comparable to a CPA firm sending auditors to its clients. In both instances, there is a compelling logic for having truly independent inspections done.

Pipeline inspectors, like auditors, are hired to work independently, just like auditors:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf. And, because this inspection work requires specialized personnel for only the duration of the project, these assignments are for a finite period. This is another reason that pipeline inspection work is outsourced to companies like Applied Consultants.

Applied Consultants hired Craft as a welding inspector and assigned him to be part of its team providing services to one of its customers -- Momentum Midstream, LLC ("Momentum"). (Lacy Declaration at ¶¶ 4, 7). Applied Consultants employed Craft on that project from May 15, 2019 until August 27, 2019. (Lacy Declaration at ¶ 14). Craft did not work as an inspector on a

project for DTE; rather, DTE merely acquired Momentum after Craft's assignment on that Momentum project had been completed. *See* http://www.momentummidstream.com/what-we-do/past-projects/m5-assets/; https://dtemidstream.com/location/louisiana-midstream/.

Applied Consultants' customers, including Momentum, pay a stipulated rate to compensate Applied Consultants for the services it provides. (Lacy Declaration at ¶ 6). This rate is all-inclusive, meant to cover overhead, profit, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. Applied Consultants then pays its inspectors -- including Craft -- in a manner that it alone determines. (Lacy Declaration at ¶ 6).

**B. Applied Consultants' Employment of Craft**

Applied Consultants hired Craft as a welding inspector; set his pay; and assigned him to be part of its team providing services to Momentum. (Lacy Declaration at ¶¶ 7, 11). Applied Consultants paid Craft a guaranteed "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations. (Lacy Declaration at ¶¶ 11, 15); *see* 29 C.F.R. § 541.604(b). Applied Consultants also determined that Craft's pay and duties qualified him as an overtime exempt administrative employee under the FLSA. (Lacy Declaration at ¶ 12); *see also* 29 U.S.C. § 213, 43 Pa. Stat. § 333.105.

Before he was hired, Craft agreed to be subject to Applied Consultants' various policies and procedures governing is employees. Specifically, he acknowledged the following:

- Acknowledgment of Eagle Infrastructure Services' Employee Handbook, applicable to employees of its subsidiary Applied Consultants. *See* Lacy Declaration, Ex. D.
- Acknowledgment of Applied Consultants' Employee Code of Conduct. *See* Lacy Declaration, Ex. E
- Acknowledgment of Applied Consultants' Health & Safety Manual. *See* Lacy Declaration, Ex. F.

- Acknowledgment of Applied Consultants' Drug and Alcohol Policy. *See* Lacy Declaration, Ex. G.
- Acknowledgment of Applied Consultants' Employee Driving Policy. *See* Lacy Declaration, Ex. H.
- Acknowledgment of Applied Consultants' Employee ATV/UTV Policy. *See* Lacy Declaration, Ex. I.
- Acknowledgment of Applied Consultants' Gift Acceptance Policy. *See* Lacy Declaration, Ex. J.

In fact, during his hiring and onboarding process, Craft signed or filled out *sixteen* separate documents identifying him as an employee of Applied Consultants. (Lacy Declaration at ¶ 10). These included an Internal Revenue Service ("IRS") W-4 Tax Form. (Lacy Declaration, Ex. Q). And, following the conclusion of his employment, Applied Consultants received a request from the Louisiana Bureau of Health Services Financing to confirm Craft's employment for the purposes of determining Medicaid eligibility. (Lacy Declaration at ¶ 16).

Significantly, Craft executed an arbitration agreement as a condition of his employment. (Lacy Declaration at ¶ 8). Under that arbitration agreement, Craft committed:

> to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or statutory law.

(Lacy Declaration, Ex. B (Craft Arbitration Agreement) at ¶ 2). Craft also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Lacy Declaration, Ex. B at ¶ 2). Finally, Craft agreed that "[a]rbitration shall be conducted in accordance with American Arbitration Association Employment Arbitration Rules ("AAA Rules")." (Lacy Declaration, Ex. B at ¶ 4).

Applied Consultants assigned Craft to provide services on its behalf to Momentum from May 15 until August 27, 2017. (Lacy Declaration at ¶ 14). During this approximately three month period, Applied Consultants paid him $23,994.00 in gross salary. (Lacy Declaration at ¶ 15).

During the time that Craft worked on the Momentum M5 Midstream Project (subsequently acquired by DTE), Craft was undeniably employed by Applied Consultants.

## III. ANALYSIS

Craft seeks to opt-in under the FLSA to this lawsuit which asserts claims not against his employer (Applied Consultants) nor even against its customer (Momentum) but against an entity (DTE) that might be a successor to that customer. The reality is that Craft believes that DTE was a successor to Momentum, which in turn was his joint employer *with Applied Consultants*. That is his only route to holding DTE liable for the alleged violations of the FLSA and parallel state statute.

Craft's own declaration admits that this is indeed his view:

> 2. I worked as a welding inspector on the M5 pipeline, owned by Momentum Midstream (Momentum) and later purchased by DTE, and was paid through a staffing company, Applied Consultants, Inc. (Applied) from approximately May 2019 to October 2019.
>
> 3. During this timeframe, I was financially dependent on Momentum and paid through Applied. **I relied on Momentum as my joint employer** and my assignments with Momentum provided a predictable paycheck.

Dkt. 33-4 (emphasis added).

That Momentum/DTE might be a joint employer along with Applied Consultants cannot and does not alter Applied Consultants' undeniable interest as his primary employer -- the entity that hired him, classified him, and paid him -- in intervening in this case.

Applied Consultants has a dual interest here. First, its interest in enforcing Craft's commitment to arbitration. Second, its interest in defending against Craft's claim challenging Applied Consultants' decision to classify him as overtime exempt. Permitting this lawsuit to go forward without Applied Consultants' participation would deprive Applied Consultants of these interests.

Therefore, Applied Consultants moves to intervene pursuant to Rule 24(a) and 24(b). [1]

## A. Rule 24(a)(2): Intervention As Of Right

Rule 24 requires the intervention of anyone who timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may **as a practical matter** impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). As a practical matter, Applied Consultants -- Craft's actual employer -- has such an interest.

*Robertson v. Enbridge (U.S.) Inc*., No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020) (attached as Exhibit 2), *report and recommendation adopted* No. 2:19-cv-01080-WSS-LPL, Dkt. 111 (W.D. Pa. May 1, 2020) is illustrative. There, the court confronted the same exact issue: an FLSA lawsuit brought (by Craft's counsel) not against the pipeline inspection services companies that were the actual employer, but rather against those companies' customer. The pipeline services companies' intervention was granted; there was a sufficient interest in intervention because:

> They hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay. They provided the employees to the named Defendant. The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition. Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they stated a sufficient interest in the litigation. In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or

[1] Pursuant to Federal Rule of Civil Procedure 24(c), Applied Consultants attaches as Exhibit 5 a memorandum of law in support of a forthcoming motion to compel arbitration, seeking to enforce its bargain with Craft. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). Applied Consultants will file a motion to compel arbitration and supporting memorandum upon the Court's approval of its intervention.

> arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id*. at 6.

Similarly, *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Ex. 3), plaintiff (again represented by Craft's attorneys) took the same tactic: bringing an FLSA lawsuit against a customer of Applied Consultants. The court granted intervention, and the logic for that ruling applies equally here: "[t]he Court finds the potential for Silver Creek [customer] to claim Applied is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Id*. at 6.

The Third Circuit has distilled Rule 24(a)(2) into four parts, explaining that the Rule entitles intervention if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). Here, Applied Consultants meets all four requirements.

**First**, Applied Consultants' motion, filed in the midst of a dispute regarding whether the proper DTE entity is named defendant, is timely; intervention at this early stage of the litigation does not unduly delay or prejudice the rights of the named Plaintiff, DTE, or Craft. *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co*., 239 F.R.D. 404, 413 n.9 (W.D. Pa. 2006) (intervention timely where the "case is still in its initial stages").

**Second**, Applied Consultants has an interest in this case on multiple levels:

**i.** The central issue in this case is whether Craft's pay and duties qualified him for an overtime exemption. Applied Consultants has an interest in the adjudication of this issue because, as his employer, it set his job as overtime exempt and exclusively controlled his pay. Further, any

liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . ."). The potential that Applied Consultants, Craft's employer, may be jointly liable with DTE (if Craft is able to show that DTE also employed him) is a legally sufficient interest for intervention. *Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc., Inc.*, 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

**ii**. Applied Consultants not only has an interest in vindicating its proper classification of Craft as overtime exempt but also has a distinct interest in enforcing Craft's arbitration agreement. Moving forward without Applied Consultants could result in Craft being able to avoid the arbitration forum in which he committed to bring his individual employment claims. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020) (attached as Ex. 4) (determining the exact same arbitration agreement Craft signed required arbitration of all employment claims, regardless of whom they were brought against). This would deprive Applied Consultants of the benefit of the bargain it struck with Craft: in exchange for employing him and paying him significant compensation, Applied Consultants assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

**Third**, disposing of this action without Applied Consultants would impair those interests. Most pointedly, its ability to defend against Craft's claims that his compensation ran afoul of the FLSA would **as a practical matter** be limited. If Applied Consultants -- the entity that set and paid Craft's salary; determined that he was eligible for exempt status; and maintains the

employment records on which his case is predicated -- is excluded, it would be deprived of the "opportunity to raise arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (allowing a general contractor to intervene in a lawsuit brought by a sub-contractor against the general contractor's insurer and determining, with respect to impairment of interest, that the possibility that the intervenor could be held liable without having an opportunity to legally dispute that liability impaired the intervenor's interest, which could not be cured "simply because [the general contractor] has an opportunity to defend against an indemnification claim by [the insurer]").

**Fourth**, Applied Consultants' interest is not adequately represented by the existing parties. As *Robertson* recognized, "[a]lthough the interests of [Applied Consultants] are like those of [DTE], they diverge in that [DTE], they diverge in that [Applied Consultants is] the entit[y] that determine and cut the paychecks; they also have employment contracts with the opt-in plaintiff[] that [DTE] does not." Dkt. 98 at 8.

DTE lacks the records and witnesses to defend an employment claim from an individual that it never employed. DTE did not classify Craft as exempt, nor write his paychecks. Applied Consultants' "superior understanding" of their employment classification and "greater access to relevant documents and individuals may result in" its "interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces, LLC v. Aderas, Inc*., C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (determining that a company could intervene as of right in a patent suit brought against its customer because the company was the creator and manufacturer of the products at issue).

Moreover, Applied Consultants is one of multiple companies engaged by DTE (and Midstream) to provide inspection services, and, as such, there are other plaintiffs in this suit (including named plaintiff Page) that have no relation to Applied Consultants. It does not "strain the imagination" to "conjure up situations" where DTE might enter into a global settlement that disadvantages Applied Consultants. *Kleisser v. United States Forest Services*, 157 F.3d 964, 974 (3d Cir. 1998) (suggesting inadequacy of representation because, although the movants had the same overall objective as the logging companies that were party to a suit seeking to limit foresting activities, the logging companies could make compromises that benefit themselves at the expense of competing companies and the movants who were not party to the suit).

**B. Rule 24(b): Permissive Intervention**

Even if there could be doubt about intervention as of right, Applied Consultants is entitled to intervene as a matter of permission on those same considerations. Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact." Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Craft's arbitration commitment. That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, Dkt. 98 at 10 (determining whether a court is the proper forum for an FLSA claim given an arbitration agreement is a common question of law).

There are also **common questions of fact**. The central issue in this suit is whether Craft's pay and duties qualify him as overtime exempt under the FLSA. These questions cannot be resolved without addressing the actions of Applied Consultants, which paid his salary and determined that his duties and salary met the administrative exemption requirements under the FLSA and parallel state statute. Applied Consultants asserts a defense -- that it properly classified Craft -- that shares common facts with any argument DTE may make on the merits. *Robertson*, Dkt. 98 at 11 (deciding that "[a]ny determination that Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Craft's actual employer. *See Snow*, Dkt. 30, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## IV. CONCLUSION

For these reasons, Applied Consultants should be allowed to intervene in this case.

Respectfully submitted,

Date: May 14, 2020

*<u>/s/Ryan O. Hemminger</u>*
Ryan O. Hemminger
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
(412) 261-1600 (phone)
(412) 227-5551 (fax)
rhemminger@leechtishman.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com

*Counsel for Applied Consultants, Inc*

**CERTIFICATE OF SERVICE**

The undersigned does certify that on the 14th day of May 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

*/s/ Ryan O. Hemminger*
Ryan O. Hemminger